**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:20-cv-00117-JHM-HBB**

**IN THE MATTER OF THE COMPLAINT OF**
**FOERTSCH CONSTRUCTION COMPANY, INC.,**
**AS OPERATOR AND OWNER OF BARGE FCC-6**                                **PLAINTIFF**

**V.**

**ADM GRAIN COMPANY, *et al*.**                                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff's Motion to Set Aside the Settlements and Motion to Dismiss the Limitation Action and Stay [DN 68]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion to Set Aside the Settlements is **DENIED** and the Motion to Dismiss the Limitation Action is **GRANTED**. The Stay found in the Limitation Order [DN 5 at 3] is **LIFTED**.

**I. BACKGROUND**

The facts of this case are uncontested. This case arises out of a maritime accident occurring on May 17, 2019, in which Claimant John Bennett injured his left leg while working from Barge FCC-6 on the Ohio River. [DN 68-1 at 1]. Bennett was employed by Bulldog Diving Company ("Bulldog") at the time of the accident. *Id.*

Following the accident, Bennett began receiving benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA") from Bulldog and its LWHCA insurance carrier. *Id.* On May 15, 2020, John and Tracy Bennett ("Claimants") filed suit against Bulldog Diving, ADM Grain Company, Owensboro Grain Company, and Foertsch Construction Company ("Foertsch") in the Henderson County Court for damages under the Jones Act. *Id.* at 2.

As the LWHCA and the Jones Act are mutually exclusive, the LHWCA carrier stopped Bennett's LHWCA benefits.  *Id.*  On July 22, 2020, Foertsch filed a Complaint for Exoneration from a Limitation of Liability [DN 1] against the Claimants, Owensboro Grain, ADM Grain, Archer-Daniels-Midland Company (Archer-Daniels), and Bulldog Diving ("Defendants"), pursuant to the Limitation of Liability Act which will be discussed below.  *Id.*  The Court ordered the Limitation of Liability for Foertsch and stayed all claims or actions against Foertsch until the termination of the Limitation case.  [DN 5 at 3.].

Claimants negotiated settlements on October 6, 2021, via Nathan Bishop, Esq. with Defendants and Foertsch.  [DN 68-1 at 3].  Mr. Bishop had specific power of attorney and express authority to settle these claims for the Claimants.  *Id.*  Mr. Bishop allegedly signed the Claimants' names to a Release with Defendants. *Id.*  Defendants were dismissed by Stipulation on October 19, 2021.  [DN 47].  The Court dismissed Foertsch by Order filed January 5, 2022. [DN 55].

Claimants have conceded that Mr. Bishop was authorized to enter the settlements.  [DN 68-4 at 2].  However, Mr. Bishop allegedly did not explain to the Claimants the consequences of entering an agreement to settle without gaining the consent of Bulldog or its LHWCA carrier. [DN 68-1 *at* 3].  Section 933 (g)(1) of the LHWCA requires that the employee receive written approval of the settlement from the employer and the insurance carrier prior to the agreement for the employer to remain liable for compensation.  33 U.S.C.A. § 933(g)(1)*.*  Because Claimants did not obtain this consent, the LHWCA benefits to Mr. Bennett are compromised. 33 U.S.C.A § 933(g)(2).  The Claimants assert they would not have settled had they known the consequences of Mr. Bishop's failure to gain consent.  [DN 68-1 at 3].

The Claimants request that the settlements and releases be put aside. *Id.* at 3. They first argue that F.R.C.P. 60(b) should allow this Court to relieve a party from the final judgment or order due to subsection (1) and (6) of Rule 60(b); namely that there was an excusable mistake, and this justifies relief in this case. *Id* at 5. Second, Claimant's assert that Mr. Bishop's act of not fully informing the Claimants of the effects of settling negates the specific power of attorney, rendering void the releases and settlements which he allegedly signed in Claimants' stead. *Id* at 4. Finally, they argue the notarization of the releases was improper under K.R.S. § 423.130, as the Claimants themselves did not appear before the notary during the execution of the releases. *Id.* at 5.

Alternatively, Claimants argue that should the settlements and releases remain, this Court should dismiss the Limitation Action and dismiss the Stay on other court proceedings. *Id.* at 6. Claimants argue that if the Court enforces the settlement and release with Foertsch, there is no further need for this action as it pertains only to Foertsch. *Id.* at 7. Therefore, Claimants state that the Limitation Actions should be dismissed, and the Stay on other proceedings should thus be lifted. [DN 1 at 5].

### III. DISCUSSION

### A. Motion to Set Aside the Settlement

"Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). This Settlement Agreement should be interpreted using general maritime law rather than state law because "the nature, character, and subject matter of the underlying lawsuit relates to maritime service or maritime transactions." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1352 (S.D. Fla. 2007), *aff'd,* 308 Fd. App'x. 389 (11th Cir. 2009) (unpublished); *see In re*

*Deepwater Horizon*, 785 F.3d 344, 354-55 (5th Cir. 2015); *see also Perrin v. Hayward Baker, Inc.*, 838 Fd. App'x. 805, 807 (5th Cir. 2020) (unpublished).  "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).  "General maritime law ha[s] adopted the general rules of contract interpretation and construction." *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1356 (S.D. Fla. 2007), *aff'd*, 308 Fd. App'x. 389 (11th Cir. 2009) (unpublished). As such, this Court will rely on federal law and persuasive state law to analyze the settlements. *In re Deepwater Horizon*, 785 F.3d, 354.

Settlements are "highly favored" in lieu of trials because an "amicable compromise provides the more speedy and reasonable remedy for the dispute." *In re Am. Plastics Corp.*, 102 B.R. 609, 611 (Bankr. W.D. Mich. 1989).  Nevertheless, "it is well established that a valid settlement agreement may be set aside on one of two grounds, either fraud or mutual mistake of fact." *Est. of Jones v. C.I.R.*, 795 F.2d 566, 573 (6th Cir. 1986); *see also Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948).  As Claimants have not alleged fraud, the Court will address Claimants' arguments regarding mutual mistake, Federal Rules of Civil Procedure 60(b), the power of attorney, and K.R.S. 423.130.

### 1.  Mutual Mistake

A mutual mistake is "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *JPMorgan Chase Bank, N.A. v. Winget*, 602 Fd. App'x. 246, 256 (6th Cir. 2015) (unpublished).  Claimants argue that "had they known that Mr. Bishop had not obtained the required approval and had they been advised of

the consequences for the failure to obtain such, they would not have entered into the settlement." [DN-1 at 4].

In this case, the mistake made was clearly not mutual nor did it affect the substance of the settlement. Although Claimants neglected to gain consent to settle, and thus maintain benefits paid by Bulldog's LHWCA carrier, this was not of consequence to the settlement. Further, Defendants would have had no knowledge of this requirement by Bulldog's LHWCA carrier, nor would it affect them. Because this occurrence is solely unilateral and does not affect the substance of the settlement, this argument fails.

## 2. Federal Rules of Civil Procedure 60(b)

Claimants have also cited F.R.C.P 60(b), claiming that subsection (1) and (6) will allow the Court to grant relief from the judgment. This rule states in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60. Federal Rule 60 (b)(1) will not allow the Court to grant relief. Rule 60(b)(1) is intended to provide relief when "a party has made an excusable mistake, or an attorney has acted without authority." Neither of these situations are present.

Claimants argue that the negligence or error of Mr. Bishop caused them to agree to settle. [DN 68-1 at 4]. However, the Supreme Court has held that "clients must be held accountable for the acts and omissions of their chosen counsel." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partn.*, 507 U.S. 380, 381 (1993). Further, the Sixth Circuit has held that "claims of attorney error and legal malpractice foreclose an award of relief under Rule 60(b)(1) . . . neither strategic miscalculation nor counsel's misinterpretation of the law warrants relief from

5

judgment." *McCurry ex rel. Turner v. Adventist Health System/Sunbelt, Inc.,* 298 F.3d 586, 593 (6th Cir. 2002). Therefore, Rule 60(b)(1) cannot provide relief from this judgment.

Likewise, Federal Rule 60(b)(6) does not provide relief. Rule 60(b)(6) can only apply in "unusual and extreme situations where principles of equity *mandate relief." McCurry ex rel., Inc.*, 298 F.3d at 592. Therefore, this relief must "serve the interest of substantial justice" and "claims of attorney error and strategic miscalculation do not satisfy this rigorous standard." *Id.* at 596. Claimants argue in this case that the "situations surrounding these settlements" justify relief under Rule 60(b)(6). [DN 68-1 at 6]. However, the situation surrounding these settlements is simply that Mr. Bishop made a strategic miscalculation or error. This type of situation is explicitly barred from a Rule 60(b) motion. This relief cannot be granted under Federal Rule 60(b).

### 3. Power of Attorney Authority

While Claimants admit to the Court that Mr. Bishop had a specific power of attorney and verbal authorization from the Claimants to settle, they maintain that Mr. Bishop "negated" his authority by not informing Claimants of the requirement to notify Bulldog's LHWCA carrier. [DN 68-1 at 3]. The court in *Branham v. May*, while determining whether an attorney had authority to settle a case for his clients, stated that "it is Kentucky law which governs such matters." *Branham v. May*, CIV.A. 04-214-HRW, 2007 WL 1287945, at *5 (E.D. Ky. Apr. 30, 2007), *report and recommendation adopted*, CIV.A. 04-214-HRW, 2007 WL 8447686 (E.D. Ky. Aug. 17, 2007).

"The Supreme Court of Kentucky has held that an attorney must have express authority before entering into a settlement agreement." *Id.* Further, "active participation in the particulars of settlement may be deemed to create implied authority." *Clark v. Burden*, 917 S.W.2d 574, 576

(Ky. 1996).  Should it be found that an attorney had express authority to settle, "the settlement should be enforced."  *Goodman v. U.S.*, CIV.A. 306CV-201-H, 2007 WL 1652027, at *1 (W.D. Ky. June 1, 2007).

In the case at hand, Mr. Bishop had express authority to settle the case.  In Claimant's affidavit, he states "I gave him authority to settle with these Defendants for whatever he could negotiate, and I signed a power of attorney giving him authority to sign any and all releases, checks and/or drafts connected with any of my claims."  [DN 68-4 at 2].  Authority was expressly given to Mr. Bishop to settle the cases.  Mr. Bishop's alleged error of not informing Claimants of a third-party requirement remains outside the scope of the settlement and does not bear on the case at hand. Moreover, Claimants do not supply the Court with any precedent for their claim of an automatic "negating" of expressed authority due to Mr. Bishop's alleged neglect.  Therefore, the Court will not set aside the settlements.

**4.  KRS 423.130**

Lastly, Claimants argue that because they did not personally sign the notarized agreement, under K.R.S § 423.130 the notarization of the settlement agreements was improper and should therefore be set aside.  Kentucky courts are clear that a "binding settlement agreement can be created without the signing of a formal settlement contract." *Goodman v. U.S.*, CIV.A. 306CV-201-H, 2007 WL 1652027, at *2 (W.D. Ky. June 1, 2007).  In *Dohrman v. Sullivan*, the Kentucky Supreme Court stated that "when the parties reach an agreement through correspondence, intending that the agreement shall be subsequently expressed formally in a single paper or document . . . the obligatory character of the agreement cannot ordinarily be defeated by the failure of either party to sign the formal contract."  220 S.W.2d 973, 975 – 76 (Ky. 1949).

In the case at hand, the parties came to an agreement with the intent that it be binding and be expressed formally on a document.  [DN 68-1 at 3].  As mentioned previously, Mr. Bishop had been given authority to "sign any releases" connected to the claims.  [DN 68-4 at 2].  The allegation that the Claimants did not sign themselves, despite the distinctive handwriting of each signature, is not enough to warrant the complete setting aside of the agreement.

### Alternative Motion to Dismiss the Limitation Action and Stay

The second issue is whether the Court should dismiss both the limitation action and the stay of "any claims arising out of or connected with the incident." [DN 5 at 3]. Foertsch Construction Company, the owner of the barge, brought the limitation action under 46 U.S.C. § 30505, *et seq.*, known as the Shipowners' Limitation of Liability Act of 1851 (LOLA).  [DN 1].  This act limits the liability "of the owner of a vessel for any claim, debt, or liability described in subsection (b)" to the value of the vessel and its freight.  46 U.S.C.A. § 30505(a).  This includes "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of the owner." *Id.* at (b).  This Court ordered that the limitation be "accepted as an *ad interim* Stipulation."  [DN 5 p. 2].  Further, the same order stayed "all claims and proceedings against Foertsch construction Company . . . except in this proceeding, until the termination of the limitation case."  *Id.* at 3.

"While it is true that federal courts have exclusive admiralty jurisdiction to determine whether a vessel owner is entitled to limited liability," the same statute, that grants this jurisdiction, 28 U.S.C. § 1333(1), allows suitors "all other remedies to which they are otherwise entitled."   *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998).  This is known as the "savings to suitors" clause.  *Id.*  This clause "embodies a presumption in favor of jury trials and common law remedies in the forum of the plaintiff's choice."  *Id.*  To remedy the competing interests "of a

shipowner's right to limit liability and the claimant's right to a trial by jury," the Supreme Court has described two situations in which the "claimant must be allowed to pursue a claim before a jury." *Id.*

The first situation is "where the value of the limitation fund exceeds the value of all claims against the vessel owner, and the second is where only one claim is asserted against the owner." *Id.* In other words, the district court must dissolve its stay against other proceedings if the claimant "concedes the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability." *Id.* Bulldog has argued against lifting the stay, arguing that the "principle of thrift, reason and fairness," along with the wide scope of the LOLA gives this Court leave to decide ancillary claims. [DN 74 at 7]. However, the Supreme Court has explained that requiring claimants to bring claims in federal court when there is only one claim, or when "the fund is adequate to cover all claims, would transform LOLA from an instrument protective of a vessel owner's liability to an offensive weapon by which the shipowner could deprive suitors of their common-law rights." *Id.* at 419. This rings even more true in our case, where the shipowner is no longer even a party.

Because the Court has not set aside the settlement agreement and release between Foertsch and the Claimants, there is no "competing interests" between the shipowner's limitation of liability and the "savings to suitors" clause. Since Foerstch is no longer liable for claims arising from this accident, there is no reason to limit Foertsch's liability. Therefore, the "savings to suitors" clause's presumption in favor of jury trials and common law remedies dictates that plaintiffs should have "the forum of the [their] choice." *Id.* Thus, the Motion to Dismiss the Limitation Action is **GRANTED**. Because the limitation action is dismissed, the stay found in the Limitation Order [DN 5 at 3] is also **LIFTED**.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Set Aside the Settlements is **DENIED** and the Plaintiff's Motion to Dismiss the Limitation Action [DN 68] is **GRANTED**. The Stay found in the Limitation Order [DN 5 at 3] is **LIFTED**.

cc:     Counsel of Record

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge

United States District Court

June 29, 2022